**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ROBERT WINSTON and ALLAN WHEELER,<br>*Plaintiffs,*<br>v.<br>ACADEMI TRAINING CENTER, INC.,<br>*Defendant.* | Case No. 1:12-cv-00767-LO-TCB |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT ACADEMI TRAINING CENTER, INC. TO PRODUCE UNREDACTED DOCUMENTS AND DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED**

William E. Copley
Virginia State Bar No. 43960
August J. Matteis, Jr. (admitted *pro hac vice*)
Neesa M. Sethi (admitted *pro hac vice*)
WEISBROD MATTEIS & COPLEY PLLC
1900 M Street, N.W., Suite 850
Washington, D.C. 20036
Telephone: (202) 499-7901
Facsimile: (202) 478-1795
Email: wcopley@wmclaw.com

*Counsel for Robert Winston and Allan Wheeler*

Dated: November 16, 2012

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

ARGUMENT ..... 7

I. Academi's Redactions in Admittedly Relevant Documents are Improper. ..... 7

A. Academi's Redactions of Documents for Relevance Violate the Federal Rules of Civil Procedure. ..... 7

B. Academi Impermissibly Redacted Relevant Material. ..... 12

C. Academi's Redaction of Documents for Confidentiality is Unwarrented. ..... 17

II. Academi has Failed to Substantiate its Assertions of Privilege for the Documents that It Is Withholding from Discovery. ..... 22

CONCLUSION ..... 26

# TABLE OF AUTHORITIES

## Cases

*Adair v. EQT Prod. Co.*, 1:10-CV-00037, 2012 WL 2526982 (W.D. Va. June 29, 2012) ..... 18, 19

*ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, No. 1:10-cv-00362, 2010 WL 5230862 (N.D. Ohio Dec. 16, 2010) ..... 7, 9, 10

*ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 1:09CV471, 2011 WL 1807439 (M.D.N.C. May 11, 2011) ..... 20, 21

*Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441 (D. Minn. 2011) ..... 7, 8, 9, 13, 15

*Beverage Distribs., Inc. v. Miller Brewing Co.*, Nos. 2:08-cv-827, 931, 1112, 1131, 1136, 2010 WL 1727640 (S.D. Ohio Apr. 28, 2010) ..... 7, 10

*David v. Alphin*, 3:07-CV-11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010) ..... 11

*Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691 (D. Nev. 1994) ..... 19

*Etienne v. Mitre Corp.*, 146 F.R.D. 145 (E.D. Va. 1993) ..... 11

*Flynn v. Goldman*, No. 91 Civ 0035, 1991 WL 238186 (S.D.N.Y. 1991) ..... 8

*Hanson v. First Nat. Bank*, CIV.A. 5:10-0906, 2011 WL 5865472 (S.D. W. Va. Nov. 18, 2011) ..... 12

*Hawkins v. Stables*, 148 F.3d 379 (4th Cir. 1998) ..... 22, 23, 24, 25

*Henson By and Through Mawyer v. Wyeth Labs., Inc.*, 118 F.R.D. 584 (W.D. Va. 1987) ..... 19

*Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, CA 6:08-CV-03980, 2010 WL 890067 (D.S.C. Mar. 8, 2010) ..... 20

*Howell v. City of New York*, No. CV-06-6347, 2007 WL 2815738 (E.D.N.Y. 2007) ..... 7

*Massey Coal Servs., Inc. v. Victaulic Co. of Am.*, 249 F.R.D. 477 (S.D.W. Va. 2008) ..... 19, 20

*Medeva Securities Litigation*, No. 93-4376, 1995 WL 943468 (C.D. Cal. May 30, 1995) ..... 10, 11

*Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691 (W.D. Tenn. 2002) ..... 7, 8, 11, 13

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) ........................................ 17, 19, 24

*Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008) ................................................................ 7, 11, 13

*Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264 (E.D. Va. 2004) ....................................... 26

*Smith v. MCI Telecom. Corp.*, 137 F.R.D. 25 (D. Kan. 1991)................................................. 8, 12

*Tustin v. Motorists Mut. Ins. Co.*, 688 F. Supp.2d 755 (N.D. W. Va. 2009) ............................... 20

*Under Seal v. Under Seal*, 326 F.3d 479 (4th Cir. 2003) ........................................................... 19

*United States v. (Under Seal)*, 748 F.2d 871 (4th Cir.1984) ........................................................ 12

*United States v. Davis*, No. 85-cv-6090, 1988 WL 96843 (S.D.N.Y. 1988) ............................................................................................................ 8

*United States v. Int'l Bus. Mach. Corp.*, 67 F.R.D. 40 (S.D.N.Y. 1975)..................................... 19

*United States v. Nixon*, 418 U.S. 683 (1974) ............................................................................... 22

*Virginia Dept. of State Police v. Washington Post,* 386 F.3d 567 (4th Cir. 2004).............................................................................................................. 17

*Wilhelm v. Cain*, 78 Fed. R. Serv. 3d 689 (N.D. W. Va. 2011)................................................... 12

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................................... 10

Fed. R. Civ. P. 26 ......................................................................................................................... 17

Fed. R. Civ. P. 26(b)(1).................................................................................................. 8, 14, 158

Fed. R. Civ. P. 26(b)(5)................................................................................................................. 22

Fed. R. Civ. P. 34(a)(A)(1) ............................................................................................................. 9

Fed. R. Civ. P. 34(b)(2)(E)(i)........................................................................................................ 10

**PRELIMINARY STATEMENT**

Plaintiffs Robert Winston ("Winston") and Allan Wheeler ("Wheeler") (collectively "Plaintiffs") bring this motion to compel Defendant Academi Training Center, Inc. ("Academi") to produce documents that it has redacted or withheld in violation of the Federal Rules of Civil Procedure and relevant judicial decisions applying those Rules. Academi has produced 493 pages of documents in this case. It has redacted 178 (36 percent) of those pages and blacked out approximately 100 pages almost entirely. When the parties conferred, Academi confirmed that it redacted these documents for relevance and confidentiality, with only six documents redacted or withheld for a claimed privilege. Academi's redactions are improper.

Academi's relevance redactions are irreconcilable with the plain language of Federal Rules of Civil Procedure 26 and 34, as well as Rule 1, which states that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Redactions for relevance have the opposite effects. They create unnecessary discovery disputes, increase costs, delay discovery, and require unwarranted judicial attention, including *in camera* inspections, while doing nothing to enhance the just determination of a case.

Although the substance of thematerial that Academi has redacted remains mostly unknown, Plaintiffs nevertheless can demonstrate that Academi has redacted unquestionably relevant information. A key issue in this case is whether Winston received his Independent Contractor Service Agreement, which contained the arbitration clause at issue, before he signed it. Academi has contended that Alicia Speteri, an Academi human resources employee, emailed the document to Winston ahead of time, but Academi then nevertheless redacted the 60 pages of attachments to that email. Academi further redacted the name of the one person other than

Winston who also received that email. These redactions improperly impeded Plaintiff's ability to demonstrate that Academi's allegations regarding the attachments to Spiteri's email are false.

Academi's redactions for purported confidentiality similarly are improper. The Federal Rules of Civil Procedure do not allow unilateral redactions for confidentiality. Rather, Rule 26(c)(1)(G) requires a party who seeks protection for confidential or trade secret information to move for a protective order. Moreover, Academi has not differentiated its redactions for relevance and confidentiality, much less met its burden of establishing a legitimate basis for each asserted confidentiality redaction. Indeed, the blanket justifications that Academi has provided – *e.g.*, "[t]he redacted forms include … forms developed at the company expense" – indicate that the redacted information falls far short of satisfying the applicable legal standards for confidentiality.

Finally, Academi withholds or redacts six documents based on assertions of privilege. Academi's initial privilege log did not identify a single attorney and described most of the documents as training materials. After Plaintiffs pointed out this deficiency, Academi produced a new log that identified a Christian Bonat as an "attorney involved," but the log provides no information regarding the nature of Bonat's alleged "involvement." Thus both of Academi's logs fail to establish that the documents withheld involve communications with an attorney acting in that capacity for the purpose of rendering legal advice, as governing law requires.

In short, Academi has deprived Plaintiffs of full access to over one-third of the materials in the admittedly relevant and responsive documents that Academi possesses. Accordingly, Plaintiffs bring this motion to obtain full access to the discovery that the Federal Rules of Civil Procedure provide.

**BACKGROUND**

Academi is a company that contracts with the United States Department of State ("State Department") to provide private security specialists to protect United States ambassadors, diplomats, and other individuals in high-risk areas of the world. Plaintiffs were firearms instructors who each signed an Independent Contractor Service Agreement ("ICSA") with Academi. Winston and Wheeler both were deployed to Afghanistan after signing the ICSAs. Substantively, this case arises out of Academi's retaliatory termination of Winston's and Wheeler's contracts for reporting that Academi had falsified weapons test scores and submitted them to the State Department in violation of the False Claims Act, contracts, and common law doctrines.

Academi has moved to dismiss the Complaint in this case based on an identical arbitration clause in the ICSAs that Winston and Wheeler signed (the "Arbitration Clause"). During the hearing on Academi's motion, this Court held that the substantive terms of Academi's Arbitration Clause contain "ridiculous limitations" because, for example, the Clause: (1) prohibits former judges from being the arbitrator; (2) requires Plaintiffs to pay both parties' attorney's fees regardless of the outcome of the case; (3) prohibits all discovery; and (4) limits the arbitration hearing to one day.

Plaintiffs further argued that enforcing the Arbitration Clause would be procedurally unconscionable because Winston and Wheeler executed the ICSAs under deceptive and coercive circumstances. This argument led the parties to submit conflicting declarations and representations of fact to the Court. As a result, this Court ordered the parties to take discovery regarding "the facts surrounding [the ICSAs'] signing," such as "the relative bargaining position of the parties, the educational background, the circumstances surrounding the signing of [these] agreement[s]…[w]hether prior agreements were signed that included the same language…[and]

[w]hether the plaintiffs actually had copies of these agreements or they were available to them." Hr. Tr. at 10, 22.

In compliance with this Court's Order, the parties exchanged interrogatories, document requests, and deposition notices. On October 26, 2012, Academi produced documents in response to Plaintiffs' document requests.

As noted above, Academi redacted 178 (36 percent) of the 493 pages of documents that it produced.[1] Academi has confirmed that it "has redacted certain information that is not responsive to Plaintiff's requests and/or irrelevant to the limited issue of procedural unconscionability."[2] In some cases, Academi has redacted the majority of the text in these admittedly responsive and relevant documents.[3]

Academi also has redacted documents for confidentiality. According to Academi, "the redacted information falls into two categories – 1) names and 2) confidential and/or proprietary forms unrelated to the execution of arbitration agreements …."[4]

Academi also withheld or redacted six documents as privileged. On its initial privilege log, Academi did not identify an attorney as either an author or recipient of these documents.[5] Academi also refused to identify certain recipients of the documents, stating instead that the document was received by "undisclosed recipients."[6] Several documents also are identified as "training" documents, raising the question of whether these documents were disclosed to trainees like Wheeler before they entered into a contractor agreement with Academi.

---

[1] *See*, November 16 Declaration of Timothy Belknap ¶ 5, attached as Exhibit A.
[2] *See* Letter from Justin Chiarodo, Counsel for Academi, to William Copley, Counsel for Plaintiffs, at 1 (Nov. 7, 2012), Exhibit B.
[3] *See, e.g.,* Email from Alicia Spiteri, Academi human resources employee, to Robert Winston and a redacted recipient (Jan. 30, 2012), with redacted exhibits, bates number A00210-80, Exhibit C.
[4] *See* Letter from Justin Chiarodo, Counsel for Academi, to William Copley, Counsel for Plaintiffs, at 2 (Nov. 7, 2012), Exhibit B.
[5] *See* Academi's Initial Privilege Log, Exhibit D.
[6] *Id.*

On November 2, 2012, Plaintiffs sent Academi a letter regarding certain deficiencies in Academi's document production and privilege log.[7] Plaintiffs noted that Academi had redacted a substantial number of documents without justifying the redactions on its log. With respect to the six documents identified on its privilege log, Plaintiffs objected that Academi had provided no indication that those documents actually are privileged because Academi's log does not mention a single attorney. Plaintiffs accordingly requested that Academi produce in full the redacted and withheld documents, or otherwise provide an appropriate privilege log identifying a legally appropriate basis for every redaction or assertion of privilege.

On November 7, Academi responded. Academi confirmed that it had redacted an undisclosed number of documents for relevance.[8] Academi stated that it had redacted other documents to protect allegedly "confidential" information, such as "forms developed at the Company's expense," "Company training methodologies," and "forms provided by the U.S. Government."[9] Academi refused to provide a log explaining the basis for each redaction. Instead, it reproduced some redacted documents with redactions removed from some headings.[10]

With its November 7 letter, Academi sent to Plaintiffs a revised privilege log that addressed the same six documents referenced in Academi's initial log.[11] In this revised privilege log, Academi provided even less information than the initial privilege log regarding the contents of the documents at issue, describing every document as "[i]nternal communications regarding preservation of documents in anticipation of litigation" and removing the references to

---

[7] *See* Letter from William Copley, Counsel for Plaintiffs, to Justin Chiarodo, Counsel for Academi (Nov. 2, 2012), Exhibit E.
[8] *See* Letter from Justin Chiarodo, Counsel for Academi, to William Copley, Counsel for Plaintiffs (Nov. 7, 2012), Exhibit B.
[9] *Id.* at 2.
[10] *Compare* email from Alicia Spiteri, Academi human resources employee, to Robert Winston and a redacted recipient (Jan. 30, 2012), with redacted exhibits, bates number A00210-80, Exhibit C; *with* A00210-80 as Academi originally produced the document, Exhibit F.
[11] *See* Academi's amended privilege log, Exhibit G.

"training."[12] Like the initial privilege log, the revised privilege log does not identify an attorney either as an author or recipient for most of the documents. Instead it identifies a Christian Bonat as the "attorney involved" for every document, without disclosing the nature of Mr. Bonat's purported "involvement."

The effect of some of Academi's redactions became apparent on October 17, 2012, when Academi filed its Motion for Protective Order to prevent Winston and Wheeler from deposing any of the individuals that Academi had identified as having relevant knowledge. During oral argument and briefing, Academi contended that it provided Winston with an advance copy of his ICSA as an attachment to a January 30, 2012 email from Alicia Spiteri, stating:

> While Plaintiffs argue that they should be entitled to cross-examine Spiteri on this point, all of the contemporaneous evidence available, which has already been produced to Plaintiffs, indicates that Winston is just plain wrong, and that Spiteri did provide Winston with the documents ahead of time. *See* Ex. A [the Spiteri January 30, 2012 email]. The mere fact that Plaintiff Winston has an apparent failure of memory is not sufficient grounds to allow the deposition of Spiteri.[13]

Despite making this representation, Academi had redacted all of the exhibits to Spiteri's January 30, 2012 email, including the attachment named "WPPS Admin Pac.zip."[14] It also redacted the identity of the person other than Winston who received this email and might be able to testify regarding which documents Spiteri attached to the email. Only after Academi subsequently (less than 48 hours before the hearing) produced documents that removed some of the redactions to the headings could Plaintiffs establish to the Court that Academi's assertion was false and that Spiteri's email did not in fact attach Winston's ICSA.

---

[12] *Compare id. with* Academi's initial privilege log, Exhibit D.
[13] Defendant Academi's Reply Memorandum of Law in Support of Its Motion for a Protective Order at 6 (filed Nov. 6, 2012), Docket No. 28.
[14] *See* original email from Alicia Spiteri, Academi human resources employee, to Robert Winston and a redacted recipient (Jan. 30, 2012), with redacted exhibits, bates number A00210-80, Exhibit F.

Thus, Academi's redactions deprived Plaintiffs of evidence relevant to rebutting Academi's false allegation of a material fact. Following this incident, Plaintiffs further conferred with Academi in an attempt to persuade it to withdraw its improper redactions and produce a proper privilege log. Because those further attempts to confer proved fruitless, Plaintiffs have filed this motion.

## ARGUMENT

### I. Academi's Redactions in Admittedly Relevant Documents are Improper.

#### A. Academi's Redactions of Documents for Relevance Violate the Federal Rules of Civil Procedure.

In this case, Academi has gone through its document production line-by-line to redact pages, paragraphs, and lines that it unilaterally deems irrelevant from otherwise admittedly relevant and responsive documents. Academi's conduct is irreconcilable with the plain language the applicable rules of the Federal Rules of Civil Procedure. Even if Academi's conduct was not categorically impermissible, Academi has failed even to attempt to meet its burden of justifying each of its redactions.

Courts repeatedly have held that "[r]edaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request." *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011).[15]

---

[15] *See also, e.g., ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, No. 1:10-cv-00362, 2010 WL 5230862 at *3 (N.D. Ohio Dec. 16, 2010) ("The Court sees no compelling reason for [defendant] to not disclose information solely on the grounds that [defendant] thinks the non-disclosed materials are not relevant or responsive where that information appears in a document that contains otherwise relevant or responsive information."); *Beverage Distributors, Inc. v. Miller Brewing Co.*, Nos. 2:08-cv-827, 931, 1112, 1131, 1136, 2010 WL 1727640 at *4 (S.D. Ohio Apr. 28, 2010) ("[T]here is no express or implied support in in the Rules of Civil Procedure for a procedure allowing a party to scrub responsive documents of nonresponsive information") (citations and punctuation omitted); *Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301 at *2 (W.D. Pa. Sept. 30, 2008) (same); *Howell v. City of New York*, No. CV-06-6347, 2007 WL 2815738 at *2 (E.D.N.Y. 2007) ("It is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant."); *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691 at *5 (W.D. Tenn. 2002) ("The Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or an objection that warrants redaction, or that would involve the compilation of a privilege log, as with

The plain language of the Federal Rules of Civil Procedure mandates this conclusion, and the manner in which Academi has applied and employed redactions in this case underscores its wisdom.

As an initial matter, Federal Rule of Civil Procedure 26 entitles Plaintiffs to "obtain discovery regarding any matter … if [it] appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A request that a party produce relevant "documents complete and without excision is reasonably calculated to lead to the discovery of admissible evidence." *Smith v. MCI Telecom. Corp.*, 137 F.R.D. 25, 26 (D. Kan. 1991).

Rule 26(b)(5) authorizes parties to withhold documents and information for privilege, and it imposes stringent disclosure requirements regarding the withheld materials. Yet, Rule 26 contains no analogous provision that even arguably could authorize a party to redact portions of relevant documents, much less where, as here, the redacting party refuses to state a separate justification for each redaction. Accordingly, redactions for relevance not specifically authorized by a court violate Rule 26. *See Bartholomew*, 278 F.R.D. at 452 (holding that the interpretation of the applicable rules as prohibiting relevance redactions "is buttressed by the fact that the Federal Rules of Civil Procedure do not grant parties the power to unilaterally redact information on the basis of relevance."); *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691 at *5 (W.D. Tenn. 2002) (relying upon the absence of a disclosure mechanism analogous to a privilege log, among other reasons, to conclude that the Federal Rules of Civil Procedure do not permit redactions for relevance).

---

other redactions."); *Flynn v. Goldman*, No. 91 Civ 0035, 1991 WL 238186 at *2 (S.D.N.Y. 1991) (compelling production of documents "redacted solely on the basis of defendant's unilateral and self-serving determinations of relevance."); *United States v. Davis*, No. 85-cv-6090, 1988 WL 96843 at *3 (S.D.N.Y. 1988) (holding that defendant's "broad redactions on relevance claims of certain material, in connection with the production of concededly relevant, related material, has operated in effect to deprive the [plaintiff] unfairly of its discovery rights in the action" and that such redactions made on a blanket assertion of relevance "plainly will not do.").

Additionally, Academi's relevance redactions are contrary to the plain language of Federal Rule of Civil Procedure 34, which requires parties "to produce and permit the requesting party or its representative to inspect, copy, test, or sample … designated documents…." Fed. R. Civ. P. 34(a)(A)(1). Redactions for relevance conflict with Rule 34 because that Rule requires the production of "documents" not merely sentences, paragraphs, pictures, or other snippets of information. As several district courts have explained:

> Fed. R. Civ. P. 34 concerns the discovery of "documents"; it does not concern the discovery of individual pictures, graphics, paragraphs, sentences, or words within those documents. Thus, courts view "documents" as relevant or irrelevant; courts do not, as a matter of practice, weigh the relevance of particular pictures, graphics, paragraphs, sentences, or words, except to the extent that if one part of a document is relevant then the entire document is relevant for purposes of Fed. R. Civ. P. 34.

*Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451-52 (D. Minn. 2011); *see also ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, No. 1:10-cv-00362, 2010 WL 5230862 at *3 (N.D. Ohio Dec. 16, 2010) (holding that parties are not permitted to redact for relevance because "the language of Rule 34 discusses production of 'documents,' rather than paragraphs or sentences"); *Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301 at *2 (W.D. Pa. Sept. 30, 2008) (holding same and explaining that "Rule 34 talks about production of 'documents,' as opposed to the relevant information contained in those documents.").

Additionally, Rule 34 expressly grants Winston and Wheeler the right to "inspect" Academi's documents, and "'[c]ertainly, a party that seeks to "inspect" a document would anticipate being able to inspect the entire document.'" *ArcelorMittal Cleveland Inc.*, 2010 WL 5230862 at *3 (quoting *Orion Power Midwest*, 2008 WL 4462301 at *2). "'There is no express

or implied support for the insertion of another step in the process … in which a party would scrub responsive documents of non-responsive information.'" *Id.*

Academi's unilateral relevance redactions further violate Rule 34's requirement that Academi "must produce documents as they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i). As one Court has noted in holding relevance redactions to be improper, "[i]t is at least implicit that the duty to 'produce documents as they are kept in the usual course of business' includes the substantive contents of those documents.'" *Orion Power Midwest*, 2008 WL 4462301 at *2; *Beverage Distributors, Inc. v. Miller Brewing Co.*, 2:08-cv-827, 931, 1112, 1131, 1136, 2010 WL 1727640 at *4 (S.D. Ohio Apr. 28, 2010). Here, there is no doubt that Academi made the redactions at issue for purposes of producing the documents in discovery. Indeed, Academi admitted in its response to Plaintiffs' letter objecting to the redactions that "ACADEMI has redacted certain information that is not responsive to Plaintiff's requests and/or irrelevant to the limited issue of procedural unconscionability."[16] Accordingly, Academi has violated its discovery obligations by refusing to produce relevant and responsive documents as it maintained them.

Perhaps most fundamentally, redaction for relevance is inconsistent with the instruction in Federal Rule of Civil Procedure 1 that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Orion Power Midwest*, 2008 WL 4462301 at *2. Redactions for relevance have the opposite effects. They increase costs, delay discovery, and generate disputes while doing nothing to enhance the just determination of a case. As the court held in *In re Medeva Securities Litigation*:

---

[16] *See* Letter from Justin Chiarodo, Counsel for Academi, to William Copley, Counsel for Plaintiffs at 2 (Nov. 7, 2012), Exhibit B.

> The Court does not welcome unilateral editing of documents by the producing party. Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make documents confusing and difficult to use. All to[o] often, the practice results in litigation of collateral issues and in camera review of documents by the Court, with the result that the time of both counsel and the Court is wasted. These drawbacks ordinarily outweigh the minimal harm that may result from disclosure of some irrelevant material.

No. 93-4376, 1995 WL 943468 at *3 (C.D. Cal. May 30, 1995); *see also Medtronic Sofamor Danek*, 2002 WL 33003691 at *5 (quoting *In re Medeva*); *David v. Alphin*, 3:07-CV-11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010) ("The court knows of no better way to ensure that a motion to compel will be filed than to unilaterally black out large portions of documents as the human mind is naturally curious.").

Although a few courts have authorized redaction of specific topics, usually after an *in camera* inspection, these courts have not subjugated a party to its litigation adversary's unilateral and unsupervised relevance redactions. In its November 7, 2012 response to Plaintiffs' deficiency letter, Academi cited two such inapposite cases as authority for its unilateral blanket relevance redactions.[17]

In the first case, *Etienne v. Mitre Corp.*, a plaintiff sued for age discrimination and sought in discovery "documents relating to any internal investigations or reviews conducted by defendant regarding its compliance with the Age Discrimination in Employment Act (ADEA)." 146 F.R.D. 145, 148 (E.D. Va. 1993). The defendant refused to produce reports regarding its compliance with the ADEA and other anti-discrimination laws, citing a "self-critical analysis privilege." *Id.* The Court, *after reviewing the documents in camera*, ordered production of the documents, but authorized the defendant to redact specified information regarding the

---

[17] *See* Letter from Justin Chiarodo, Counsel for Academi, to William Copley, Counsel for Plaintiffs at 2 (Nov. 7, 2012), Exhibit B.

defendant's compliance with anti-discrimination laws other than the ADEA. *Id.* n.8 The district court's decision to allow a party to redact information that *the Court* found irrelevant after an *in camera* inspection provides no support for Academi's unilateral line by line redactions of responsive documents in this case.

Academi similarly misplaces reliance upon *Hanson v. First Nat. Bank*, because the court subjected the producing party's redactions to extensive oversight and thus rejected the unfettered unilateral discretion to redact that Academi seeks to exercise in this case. *See* CIV.A. 5:10-0906, 2011 WL 5865472 (S.D. W. Va. Nov. 18, 2011). The *Hanson* court reviewed *in camera* both "an unredacted copy of the deposition transcripts and exhibits" and proposed "redacted copies of the 58 exhibits attached to the copies of the deposition transcripts." *Id.* at *1, *5. It then allowed the opposing party yet another opportunity to challenge the redactions. *Id.* at *5. In the end, *Hanson* illustrates both the burdens caused by redactions for relevance and a repudiation of the unfettered discretion to redact for relevance that Academi seeks in this case.

**B. Academi Impermissibly Redacted Relevant Material.**

In this case, Academi's redactions are particularly troubling because Academi has redacted unquestionably relevant material, and these redactions already have impeded Plaintiffs' ability to correct Academi's false representation of a material fact. In challenging individually Academi's improper redactions – and this is a fundamental problem with redactions for relevance – Plaintiffs are limited by their inability to discern the contents of the redacted material. Accordingly, the burden is on the party resisting discovery – here, Academi – to show that material in relevant documents is protected from disclosure. *See United States v. (Under Seal)*, 748 F.2d 871, 876 (4th Cir.1984); *Wilhelm v. Cain*, 78 Fed. R. Serv. 3d 689 (N.D. W. Va. 2011); *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

Even when applied with the best of intentions, redactions for relevance are highly problematic because "[t]he relevance of a document is subjective." *Medtronic*, 2002 WL 33003691 at *5. Indeed, the relevance of any particular fact can be contingent upon the parties' theories of the case, and a fact that is irrelevant under one party's view of the case can be centrally relevant to its adversary's theory. Moreover, even "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information." *Bartholomew*, 278 F.R.D. at 451.

Although Plaintiffs do not bear the burden of proving that each of Academi's redactions is improper, Plaintiffs can point to specific examples where Academi improperly has redacted unquestionably relevant information. By providing specific examples, Plaintiffs do not concede the propriety of Academi's numerous other redactions, as the content obscured by those redactions remains unknown. Rather, Plaintiffs provide these examples merely to demonstrate the danger that Academi's improper redactions pose to a fair procedure in this case.

A significant factual dispute between the parties is whether Academi, through its employee Alicia Spiteri, provided Winston with a copy of his ICSA containing an arbitration provision in advance. Academi alleges that Spiteri provided the ICSA to Winston as an attachment to a January 30, 2012 email. As Academi stated in a recently filed brief:

> While Plaintiffs argue that they should be entitled to cross-examine Spiteri on this point, all of the contemporaneous evidence available, which has already been produced to Plaintiffs, indicates that Winston is just plain wrong, and that Spiteri did provide Winston with the documents ahead of time. *See* Ex. A [the Spiteri January 30, 2012 email]. The mere fact that Plaintiff Winston has an apparent failure of memory is not sufficient grounds to allow the deposition of Spiteri.[18]

Winston disputes this assertion.

---

[18] Defendant Academi's Reply Memorandum of Law in Support of Its Motion for a Protective Order at 6 (filed Nov. 6, 2012), Docket No. 28.

Despite identifying the January 30, 2012 email as conclusive evidence that Academi provided the ICSA to Winston ahead of time, Academi redacted the attachments to the email, thereby impeding Plaintiffs' ability to demonstrate that Academi's assertion is false.[19] Initially, Academi produced the January 30, 2012 email with the seventy pages of attachments redacted almost entirely.[20] Academi also redacted the name of the other email recipient, who could identify the attachments, in violation of Rule 26(b)(1), which entitles Plaintiffs to information regarding the "identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). These redactions made it impossible discern whether the attachments included Winston's ICSA.

Academi produced a revised version of the document only after Plaintiffs objected.[21] The revised version revealed the headings, but continued to obscure the text, of the seventy pages of attachments.[22] Nevertheless, Academi's supplemental production (made after Academi filed the above-quoted brief and less than 48 hours before the hearing in this Court) allowed Plaintiffs to use the newly revealed headings to demonstrate for the first time that Academi's assertion was false and that Spiteri's email did not attach Winston's ICSA.[23]

This example unequivocally illustrates that Academi has redacted relevant information, and the effect of these redactions was to inhibit Plaintiffs' ability to demonstrate that Academi's allegation was false. Even accepting for argument that the redacted material itself could be deemed irrelevant, it indisputably is the kind of "irrelevant information within a document that contains relevant information [that] may be highly useful to providing context for the relevant

---

[19] *See* A000210-80 as originally produced by Academi on October 17, 2012, attached as Exhibit F.
[20] *Id.*
[21] *See* Letter from William Copley, Counsel for Plaintiffs, to Justin Chiarodo, Counsel for Academi (Nov. 2, 2012), Exhibit E.
[22] *See* A000210-80 as subsequently produced a second time by Academi on November 7, 2012, attached as Exhibit C.
[23] Compare *id.* with A000163-78, Winston's ICSA, attached as Exhibit H.

information" that motivated the court in *Bartholomew* to reject redactions for relevance as improper. *See* 278 F.R.D. at 451.

Similarly, Academi produced an email from Spiteri that attached the schedule for the class in which Academi has contended that Winston executed his ICSA.[24] Academi redacted the attached training schedule to obfuscate the subject matter addressed in that class, even the portions administered by Alicia Spiteri and Cheryl Desiderio in which Academi contends (and Winston disputes) that Winston signed his ICSA. The document shows that Speteri and Desiderio met with Winston's class from "0800-1200" but redacts information regarding what topics were covered, the time devoted to the documents that Speteri and Desiderio presented to the class, who was present, and other related information.[25]

This information unquestionably is relevant. Academi demonstrated that its redaction was improper and baseless when, while showing Winston the heavily redacted document, it questioned Winston in his deposition regarding the very information that Academi had redacted. First, Academi asked Winston what he remembered occurring in class on the morning of February 2, 2012 – the very activities that Academi redacted from the training schedule document marked A00346. Specifically, Academi questioned Winston to the following effect:[26]

> **Q.** Now, the schedule indicates there was a, on admin day one, piece of this that's readable, admittedly there are just a few lines that are readable, in process is the name of the event. It's scheduled for 0800 to 1200, location classroom 110, and in the remarks column the name Alicia Spiteri is there.
> **A.** Uh-huh.

---

[24] *See* Email from Alicia Spiteri, Academi human resources representative, to Candice B. Meek, Cheryl Desiderio, Laura Cooper, and TSC-Classes, along with approximately 23 other undisclosed recipients (Jan. 31, 2012), with attachment and as redacted, A000345-46, Exhibit I.

[25] *Id.*

[26] Currently, the parties only have a rough transcript of the November 13, 2012 Deposition of Robert Winston. Plaintiffs have modified the text of the rough transcript in good faith to accurately depict the questions and answers from that deposition. Plaintiffs expect to receive a final transcript prior to the due date of their reply brief regarding this motion, and they will provide excerpts of all testimony cited from the final transcript with their reply brief , assuming they receive the transcript from the court reporter in a timely manner.

> **Q.** Do you remember attending the in process that day or an administrative session that day?
> **A.** Yes.
> **Q.** Could you describe what you remember about that morning?[27]

Academi then asked Winston who represented Academi in the training class, despite having redacted the names of the Academi personnel who received the training schedule:

> **Q.** Now, you said there was a Bill, you forgot his last name?
> **A.** Yeah, Bill, can't think of Bill's – he just came over from DynCorp as an instructor, just completed his instructor certs and that was, like, there was only four of us, gave it to the new guy. All you have to do is guide everybody through, make sure they're at the classes they need to be. There's only firearm firearms you had to do, motorcade ops, and a PT test. Pretty much was all you had to do for the cert, recert.
> **Q.** And then he left and the ladies came in after that?
> **A.** Yeah.
> **Q.** And who were the ladies? There was Alicia and Cheryl?
> **A.** Alicia and Cheryl? That was it, just the two of them.[28]

Academi cannot have it both ways. Either the activities and the identity of the Academi personnel in the training room on the day that Academi alleges Winston and Wheeler signed the ICSAs is relevant, or it is not. Academi's assertion that it can test Winston's recollection of such facts, but redact the very same information from Academi's document production, is baseless.

As a final example, Academi redacted similar information from the emails and training schedule for the class in which Academi contends that Wheeler signed his ICSA.[29] Academi redacts the identities of who received the email attaching the class training schedule.[30] It then redacts the entire training schedule except for three lines identifying Kim Murphy and Cheryl Desiderio.[31] Academi has no legitimate basis for redacting such information.

---

[27] *See* Excerpts from November 13, 2012 Deposition of Robert Winston at 198:10-22, Exhibit J.
[28] *See id.* at 201:7-202:3.
[29] *See* A00090-99, Exhibit K.
[30] *Id.*
[31] *Id.* A000090-91.

### C. Academi's Redaction of Documents for Confidentiality is Unwarrented.

Academi's unilateral redactions for confidentiality are inconsistent with the Federal Rules of Civil Procedure, are unsupported by a specific showing of confidentiality for each redaction, and obscure information that, even accepting Academi's blanket characterizations of the information, does not meet the relevant standard for protection. Indeed, Academi has not even distinguished between its redactions for confidentiality and purported irrelevance, much less met its burden of showing that each redaction protects information that legally qualifies as confidential.

At the outset, Academi's redactions for confidentiality are improper because Academi engaged in unilateral redactions rather than following the procedure set forth unambiguously in Federal Rules of Civil Procedure 26, which states that a party may seek a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26. Academi never has sought such an order from this Court.[32]

[32] Academi did request that Plaintiffs agree to an unfair Proposed Stipulated Protective Order ("PSPO"). *See* Exhibit L. Academi's proposed protective order broadly defined "confidential" information as "information that the disclosing party would not customarily release to the public." PSPO ¶ 1. It permitted Academi's in-house counsel and five employees that it designates to review confidential information that Winston and Wheeler produce, but provided no mechanism for Winston and Wheeler to review such materials. *Id.* ¶¶ 11, 13. In fact, the PSPO even required counsel for Plaintiffs to "endeavor to avoid disclosing Confidential Information" to Winston and Wheeler, even though five of Academi's personnel would be authorized to receive confidential documents. *Id.* ¶ 19. It required all confidential materials to be filed under seal, even though the PSPO's definition of confidentiality falls far short of the standard for filings under seal that the United States Supreme Court and the Fourth Circuit have established. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598-99 (1978); *Virginia Dept. of State Police v. Washington Post,* 386 F.3d 567, 580 (4th Cir. 2004); *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003). It also required Winston and Wheeler to provide Academi at least five days advance notice if they intended to file a motion that would attach "confidential" material. (Given that Winston and Wheeler had no intention of producing documents as confidential, the provision, although facially bilateral, in fact unfairly applied only to disadvantage Winston and Wheeler). PSPO ¶ 25. The PSPO set forth even more restrictive requirements for a category of "Trial Counsel Only Information." When the parties conferred about the PSPO in the context of the discovery concerning the circumstances in which Winston and Wheeler signed their ICSAs, Academi did not identify a single document that actually would qualify under the applicable standards to be filed under seal. Accordingly, Plaintiffs refused to sign the PSPO.

Instead, it improperly redacted all information that it unilaterally deemed "confidential." Moreover, Academi has declined to identify which of its redactions are for confidentiality, much less explain why each of those redactions applies to information that justifiably could be exempt from discovery. Instead, Academi provides the blanket statement that "the redacted information falls into two categories – 1) names and 2) confidential and/or proprietary forms unrelated to the execution of arbitration agreements. . . ."[33] As discussed below, Academi cannot justify unilaterally excluding either category of information from discovery in this case.

With respect to names, Academi states that "[t]he redacted names *include* other training program candidates. . . ."[34] What Academi fails to mention is that the redacted names also include the Academi administrative personnel who conducted and oversaw Winston's and Wheeler's training and contract execution. Additionally, the "other training program candidates" likewise are relevant witnesses to what occurred in the training rooms, events about which Winston and Wheeler disagree with Academi. Under such circumstances, Academi's redactions violate Rule 26(b)(1), which entitles Plaintiffs to information regarding the "identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

Similarly, Academi's blanket descriptions of three categories of "forms" that it redacted demonstrates that these documents are not even the kind of materials this Court would seal in a filing, much less exempt from discovery.[35] "The fact that a document may contain confidential information does not of itself exempt it from discovery," particularly where, as here, "the plaintiffs in this case are not competitors of [the defendant] in any way and have no interest in or use for proprietary information" other than pursuing their claims in this litigation. *See Adair v.*

[33] *See* Letter from Justin Chiarodo, Counsel for Academi, to William Copley, Counsel for Plaintiffs at 2 (Nov. 7, 2012), Exhibit B.
[34] *Id.* (emphasis added).
[35] *Id.* at 2.

*EQT Prod. Co.*, 1:10-CV-00037, 2012 WL 2526982 (W.D. Va. June 29, 2012); *see also Henson By and Through Mawyer v. Wyeth Labs., Inc.*, 118 F.R.D. 584, 585 (W.D. Va. 1987) (rejecting "the proposition that commercially sensitive, etc. and trade secret information is insulated from discovery"). In this case, none of the three categories of the documents that Academi has redacted could qualify as confidential.

First, Academi alleges that "[t]he redacted forms include ACADEMI's confidential and proprietary information – that is, forms developed at Company's expense . . . ."[36] The mere fact that a company paid someone to create a document cannot render its substance immune from discovery, otherwise no company ever would produce a document. To qualify as "[c]onfidential commercial information" worthy of protection in discovery, the objecting party must demonstrate that the material to be protected contains "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Massey Coal Servs., Inc. v. Victaulic Co. of Am.*, 249 F.R.D. 477, 482 (S.D.W. Va. 2008) (quoting *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D. Nev. 1994)). To justify a need for protecting such materials, Academi must establish:

> "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by [the business] to guard the secrecy of the information ; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended … in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

*Massey Coal Servs.*, 249 F.R.D. at 482 (quoting *United States v. Int'l Bus. Mach. Corp.*, 67 F.R.D. 40, 46-47 (S.D.N.Y. 1975)).

---

[36] *Id.* at 2.

Academi has made no showing regarding these factors, and its grossly insufficient blanket assertion that some undefined subset of its redactions are "forms" that were "developed at Company expense" only confirms the absence of a legitimate basis to protect these documents. Where, as here, a party makes blanket assertions regarding confidentiality without making a specific showing regarding the need to protect each document, protection from disclosure is not warranted. *See Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, CA 6:08-CV-03980, 2010 WL 890067 (D.S.C. Mar. 8, 2010) (refusing to seal documents where "Plaintiff merely states that the documents contain proprietary information without explaining which documents contain what type of proprietary information.").

Moreover, Academi's "forms" bear no resemblance to the kinds of information that Courts have found to warrant protection, such as "customer lists," "information pertaining to market entry," "supplier lists," and "profit and gross income data." *See Massey Coal Servs.* 249 F.R.D. at 483 (discussing cases). Like the defendant in *Massey Coal Servs.*, Academi has "not made a showing as to what efforts were undertaken to keep the information contained in the documents a secret." *Id.* Rather, Academi's *forms* appear to be the kinds of unremarkable documents that every company needs to function, but that do not confer any sort of competitive advantage, and Academi has produced no information to establish otherwise. *See, e.g., Tustin v. Motorists Mut. Ins. Co.*, 688 F. Supp.2d 755, 761-62 (N.D. W. Va. 2009) (refusing to seal insurance company's claims handling manual); *Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, CA 6:08-CV-03980, 2010 WL 890067 at *4 (D.S.C. Mar. 8, 2010) ("mere business correspondence, contracts between numerous parties, and business ideas that the experts in this case concede are routine in the" relevant industry do not qualify as "confidential" materials warranting protection); *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 1:09CV471, 2011

WL 1807439 at *6 (M.D.N.C. May 11, 2011) (holding that "parties' description of these materials as 'confidential' or as a type of business record is insufficient for sealing the documents.").

The second category of information that Academi says it is redacting is "information [that] reflects confidential independent contractor information (e.g., bank accounts and personal identifiers)."[37] Yet, during Winston's deposition, Academi's counsel clarified that it was Winston's own information that Academi was redacting, stating "just for the record, the information that is redacted in this document, which begins at Bates number A000146, the redactions are on page A000160, and they relate to emergency contact information and payment information for Mr. Winston."[38] Academi has not identified a person other than Winston or Wheeler whose bank accounts or other similar information has been redacted.

Third, Academi states that it has redacted "certain other forms [that] were provided by the U.S. Government and/or reflect Government training curriculum and policies and Academi cannot disclose them without permission from the United States Government."[39] The mere fact that the government provides a form does not mean that it cannot be disclosed without permission. When pressed during the parties' efforts to confer orally, Academi's counsel identified only one example of a government document that Academi contends warrants protection – the State Department's guidelines on the use of deadly force in Afghanistan. Yet, the State Department does not share Academi's confidentiality concerns for this topic. The State Department posted its "Policy Regarding the Use of Deadly Force" for Afghanistan on its website at http://www.state.gov/documents/organization/152028.pdf, and a copy of that Policy is

---

[37] *See* Letter from Justin Chiarodo, Counsel for Academi, to William Copley, Counsel for Plaintiffs at 2 (Nov. 7, 2012), Exhibit B.

[38] *See* Excerpts from November 13, 2012 Deposition of Robert Winston at 57:17-22, Exhibit J.

[39] *See* Letter from Justin Chiarodo, Counsel for Academi, to William Copley, Counsel for Plaintiffs at 2 (Nov. 7, 2012), Exhibit B.

attached hereto as Exhibit M. To date, Academi has provided no indication that it reached out to the government to ascertain what documents the government deems confidential, and this example illustrates why the Court should not permit Academi unilaterally to withhold material from discovery based on a blanket and unprecedented assertion that all government provided "forms" and other documents are immune to discovery.

## II. Academi has Failed to Substantiate its Assertions of Privilege for the Documents that It Is Withholding from Discovery.

Finally, Academi has withheld and redacted six documents, comprising approximately 21 pages total, as privileged. Both the original log and the revised log that Academi has provided fail to substantiate Academi's assertions of privilege. The attorney-client privilege stands "in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Accordingly, the privilege "is to be narrowly construed" and applied "only to the very limited extent … that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). "The burden of proving that a communication falls under the attorney-client privilege rests on the proponent of the privilege." *Id.* (reversing district court for improperly shifting burden to party seeking production).

Federal Rule of Civil Procedure 26(b)(5) requires Academi, as the proponent of the privilege, to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The Fourth Circuit in *Hawkins* expressly stated the elements that Academi has the burden to establish in its log:

> (1) the asserted holder of the privilege is or has sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the

> communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

148 F.3d at 383. Academi's logs fail to establish several of these elements. In fact, the log demonstrates that Academi likely cannot establish these elements for some of the documents it is withholding.

The first and fourth documents that Academi identifies on its log, A000038-41 and A000291-94, are "Slideshow Presentations" authored by two of Academi human resource personnel, Laura Cooper and Kimberly Murphy.[40] In its initial log, Academi described each presentation as a "Presentation for training," and it identified no lawyer as an author or recipient of the document.[41] After Plaintiffs noted the deficiency of the first log, Academi submitted an amended log that identifies Christian Bonat as an "attorney involved" and additional author, but the amended log provides no information regarding the nature of his "involvement."[42] Even assuming for argument that the belated identification of Bonat as an author establishes a "communication [] made [by] a member of the bar of a court, or his subordinate," Academi has provided no evidence Bonat was "acting as a lawyer" or "giving advice" when he contributed to the slideshow training presentations. *See Hawkins*, 148 F.3d at 383.

The amended log also conflicts with the original log in its description of the documents. In the amended log, Academi describes these documents, and every other document that Academi has withheld as privileged, with the same boilerplate – "Internal communications

---

[40] *See* Academi's initial October 17, 2012 privilege log, Exhibit D.
[41] *Id.*
[42] *See* Academi's amended November 7, 2012 privilege log, Exhibit G.

regarding preservation of documents in anticipation of litigation." [43] These documents either are a training slideshow presentation, or litigation hold documents, but they likely are not both. Nor has Academi identified the litigation that it was anticipating in November 29, 2010 and July 21, 2011, the dates of the documents at issue, which were long before Academi terminated Winston and Wheeler. Moreover, because this was a training document, Academi's initial log also indicates that any privilege that may have existed likely was waived when the materials were disclosed to trainees.

Academi's logs for the next two documents that the company seeks to withhold as privileged – A00073 and A00075 – similarly discloses no basis for privilege.[44] Both logs identify Kimberly Murphy, a non-attorney Academi human resources employee, as the sole author of the documents. Academi's initial log describes these documents as "list of items" and "list of documents," whereas its amended log describes each document as both "Word Processing Document" and "Internal communications regarding preservation of documents in anticipation of litigation."[45] The original log mentioned no attorney in connection with these documents. In its amended log, Academi belatedly identifies Christian Bonat as an "attorney involved," but unlike with the prior documents, Academi does not identify Bonat an author or recipient. Nor does the amended log disclose the nature of Bonat's purported involvement.[46] Accordingly, Academi has failed to demonstrate that these communications involved an attorney, that the attorney was acting in his capacity as an attorney, or that the purpose of the communications was to procure legal opinions, services, or assistance. *See Hawkins*, 148 F.3d at 383.

---

[43] *Id.*

[44] *See* Academi's initial October 17, 2012 privilege log, Exhibit D; Academi's amended November 7, 2012 privilege log, Exhibit G.

[45] *Id.*

[46] *Id.*

Finally, Academi withholds three documents, A000380, 391, and 401, authored by Laura Cooper that Academi describes as "email and attached document."[47] The initial and amended logs state that Cooper sent the documents to "Kimberly Murphy" and an "Undisclosed Recipient."[48] The initial log identified no attorney in connection with these documents.[49] In fact, the log's descriptions of the documents indicate that the documents are not privileged. One is described as "Training – WPPS Class Admin Paperwork" and the other two are described as "Training – WPPS Class Admin Prep PSS and NPSS."[50]

The amended log again belatedly identifies Christian Bonat only as an "attorney involved" with these documents – not an author or recipient – without providing any information regarding the nature of his purported "involvement."[51] As with the training documents discussed above, the revised log conflicts with the original log in its description of the documents, changing their description to "Internal communications regarding preservation of documents in anticipation of litigation" without identifying the litigation at issue. [52]

Academi's log with respect to these documents falls far short of establishing the elements that the Fourth Circuit required in *Hawkins*. Specifically, Academi fails to establish that an attorney made or received the communication, that any such attorney was acting as an attorney, or that the purpose of the communications was to procure legal opinions, services, or assistance. *See Hawkins*, 148 F.3d at 383. Moreover, Academi also failed to meet its burden of establishing that the attorney-client privilege has not been waived by refusing to disclose the identity of the recipients of Cooper's emails and instead referring to such person as "Undisclosed Recipient."

---

[47] *Id.*
[48] *Id.*
[49] *See* Academi's initial October 17, 2012 privilege log, Exhibit D.
[50] *Id.*
[51] *See* Academi's amended November 7, 2012 privilege log, Exhibit G.
[52] *Id.*

*See id; see also Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 277 (E.D. Va. 2004) (holding that the burden of the party asserting privilege "includes establishing that the privilege was not waived").

Accordingly, Plaintiffs Winston and Wheeler respectfully request that the Court order Academi to produce the improperly withheld or redacted documents identified on Academi's privilege log immediately or, at a minimum, review *in camera* the approximately 21 pages of materials that Academi has withheld or redacted as privileged. Plaintiffs also respectfully request that Academi bring unredacted copies of the 21 pages to the hearing on this motion, so that they are available to the Court should it decide to review them *in camera*.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs Robert Winston's and Allan Wheeler's Motion to Compel Defendant Academi Training Center, Inc. to Produce Unredacted Documents and Documents Improperly Withheld as Privileged.

Respectfully submitted,

/s/ William E. Copley

William E. Copley
Virginia State Bar No. 43960
August J. Matteis, Jr. (admitted *pro hac vice*)
Neesa M. Sethi (admitted *pro hac vice*)
WEISBROD MATTEIS & COPLEY PLLC
1900 M Street, N.W., Suite 850
Washington, D.C. 20036
Telephone: (202) 499-7901
Facsimile: (202) 478-1795
Email: wcopley@wmclaw.com

*Counsel for Robert Winston and Allan Wheeler*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of November, 2012, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Justin Anselm Chiarodo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
Email: chiarodoj@dicksteinshapiro.com

*Counsel for ACADEMI Training Center, Inc.*

/s/ William E. Copley
William E. Copley
Virginia State Bar No. 43960
August J. Matteis, Jr. (admitted *pro hac vice*)
Neesa M. Sethi (admitted *pro hac vice*)
WEISBROD MATTEIS & COPLEY PLLC
1900 M Street, N.W., Suite 850
Washington, D.C. 20036
Telephone: (202) 499-7901
Facsimile: (202) 478-1795
Email: wcopley@wmclaw.com

*Counsel for Robert Winston and Allan Wheeler*