IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROBERT WINSTON, ET AL, <br><br> Plaintiffs, <br><br> -v- <br><br> ACADEMI TRAINING CENTER, INC., <br><br> Defendant. | Civil Action No. 1:12-cv-767 |

## MEMORANDUM OPINION

*Background*

Before the Court are supplemental briefs submitted after the parties closed limited discovery on the issue of whether there was procedural unconscionability in the independent contractor agreements at issue. After the close of discovery, the parties each submitted a brief on January 25, 2013 and a response to the others' brief on February 15, 2013. The briefs reopen Academi's motion of August 22, 2012 to stay or dismiss this action (Dkt. No. 13) so that the parties can arbitrate as set forth in their contracts. The Court conducted hearings on September 7, 2012 and February 22, 2013.

Both Robert Winston and Allan Wheeler worked as firearms instructors as part of a contract Academi had to provide private security to the U.S. Department of State. Both Plaintiffs were engaged by Academi as independent contractors, and signed independent contractor agreements (ICAs) with the company. Winston and Wheeler now allege that Academi unlawfully retaliated against them when they reported Academi for submitting false claims and records to the State Department.

According to Plaintiffs, while working on a firearms range in Afghanistan, they witnessed

1

other Academi contractors submitting false firearm certification records to the State Department. As part of Academi's contract with the State Department, all contractors were required to be recertified as part of a weapons qualification report. The instructors, such as Wheeler and Winston, would record the performance of each person as they shot at targets set up by instructors on the firing range. Those reports were then submitted by Academi officials to the State Department. On a number of occasions, Plaintiffs claim to have seen other Academi officials failing to record shooters' performances or inserting false numbers into reports. On one particular occasion, Wheeler claims he was asked to complete the weapons qualifications report himself using made-up performance numbers.

Plaintiffs were fired on March 27, 2012, the day after they reported the fraudulent activity to their supervisor. The official reason for their termination was a failure to report the fraud in a timely manner, and alleged participation in the fraud. In addition to being fired, Plaintiffs were placed on the State Department's "Do Not Use" list, preventing them from obtaining future employment under contracts serving the State Department.

The Plaintiffs now seek relief for retaliation under the False Claims Act and also under various state law causes of action. Academi argues that the entire action should be stayed or dismissed so that the dispute may be settled in arbitration, as set forth in the ICAs. The Plaintiffs contend that the arbitration provisions of the ICAs are void because they are unconscionable, and their case should be resolved in this Court.

*Arbitrability of the False Claims Act Complaint*

Before making a choice of state law and addressing unconscionability, there is a federal issue to be resolved, which is whether the False Claims Act cause should be shunted to

arbitration on its own. The False Claims Act cause enjoys a particularly strong deference because it arises under federal law so is subject to the Federal Arbitration Act, and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration . . . ." *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273-74 (4th Cir. 1997). However, cases which are inarbitrable—where arbitration could not vindicate a federal statutory cause of action—courts must not compel arbitration. *Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002).

The question of arbitrability does not look to the conditions under which the agreements were signed, only to whether the terms of the agreement describe a sufficient forum for vindicating the plaintiff's right. In *Murray*, the Fourth Circuit declined to enforce an arbitration agreement that gave the defendant the unilateral right to produce the list from which the arbitrator would be chosen, and also included language that limited the arbitrator's decision from diminishing or altering the power of the defendant union's president (which might undermine any decision made in the plaintiff's favor). *Id.* at 303-04.

In *Hooters of America v. Phillips*, the Fourth Circuit invalidated an arbitration clause that subjected all disputes to the "rules and procedures . . . as promulgated by the company" and arbitrators were to be selected from a list provided by the company. 173 F.3d 933, 938-39 (4th Cir. 1999).

The agreements now before the Court do not necessarily keep the choice of arbitrator within the sole discretion of Academi (although the ICAs do include a curious restriction against former judges serving as arbitrators). But the ICAs do include provisions that preclude the effective vindication of the Plaintiffs' rights under the FCA.

For example, no discovery is allowed in arbitration under the ICAs. FCA claims are often

document intensive. In this case, the Plaintiffs claim that Academi was falsely certifying contractors as having passed the firearms training. It will be difficult, if not impossible, to prove those claims without the allegedly falsified documents. And it will be difficult, if not impossible, to obtain those documents without discovery.

Also, the fee shifting provision of § 20.7 of the ICAs requires Plaintiffs to pay all fees and costs that arise from the arbitration, regardless of the outcome. The False Claims Act, on the other hand, provides attorney's fees to successful plaintiffs, therefore the fee shifting provision of the ICAs frustrates the clear intent of Congress.

For these reasons, the Court finds that the FCA claims cannot be subjected to arbitration by the terms of the ICA because to do so would preclude effective vindication of the Plaintiffs' federal statutory rights.

*Choice of Law*

Before determining what to do with the state law claims, the Court must resolve the dispute among the parties about which state's law governs the unconscionability analysis. A federal district court sitting in diversity applies the choice of law rules of its forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In general, under Virginia law the state where the contract was made is the state whose law governs. *Black v. Powers*, 48 Va. App. 113, 128 (2006). However, Virginia looks favorably on choice of law clauses in contracts, and gives them full effect except in unusual circumstances. *Colgan Air, Inc. v. Raytheon Aircraft, Co.*, 507 F.3d 270, 275 (4th Cir. 2007). The "unusual circumstances" exception to enforcing contractual choice of law comes up frequently in the Virginia case law, dating back to *Tate v. Hain*, 181 Va. 402, 410 (1943). The Supreme Court of Virginia has not revisited the issue often,

but it did provide a hint to what might constitute "unusual circumstances" in *Hooper v. Musolino*, 234 Va. 558, 566 (1988). In *Hooper*, the court chose to enforce a partnership agreement's choice of law provision because the chosen state "was reasonably related to the purpose of the agreement." *Id.* This strongly implies that a contractual choice of law provision bearing no reasonable relation to the purpose of the agreement falls within *Tate's* "unusual circumstances" exception, and so is unenforceable.

In this case, the ICAs signed by each Plaintiff specified that New York law was to govern any disputes arising from the agreements. But New York bears no reasonable relationship to any of the parties or to the purpose of the agreement. Academi is a Delaware corporation, headquartered in Virginia. It contracted with the Plaintiffs, neither of whom is from New York, to train in North Carolina for the ultimate purpose of providing services overseas.

Because neither the parties nor the ICAs have any connection New York, the Court finds that it would be highly unusual for New York law to apply. So under the reasoning of *Tate* the Court declines to enforce the contractual choice of law in the ICAs, and North Carolina law applies because North Carolina is where the ICAs were executed.

*Unconscionability*

The state law claims and the FCA claim can also all be considered together under the broader umbrella of unconscionability. If the arbitration terms of the ICAs are unconscionable, they cannot be enforced as to either the state or federal claims. North Carolina requires the presence of unconscionability in both the conditions under which the contract was formed (procedural), and also unconscionability in the actual terms of the contract (substantive). *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008). But North Carolina balances

the procedural against the substantive so that if there is severe substantive unfairness, only minimal procedural unfairness is required to show unconscionability. *Id.*

In this case, as discussed above, there is substantial substantive unfairness. For all the reasons that the arbitration provisions of the ICAs frustrate the purposes of the FCA claim, they also make effective prosecution of Plaintiffs' state court claims unfairly difficult. The procedural unfairness in this case was not as pronounced as Plaintiffs make it out to be, but the Court finds there is sufficient evidence in the record to show that both Plaintiffs were rushed and pressured through the signing of their ICAs to support a claim of unconscionability[1]—especially given the significant substantive unfairness of the agreements.

*Severability*

The remaining question is whether to sever the unconscionable terms with the hope of saving the arbitration clause, or to simply declare the clause unenforceable and keep the case for resolution in this Court.

In *Murray,* the Fourth Circuit cited with approval *Perez v. Globe Airport Sec. Servs., Inc.,* 253 F.3d 1280 (11th Cir. 2001), which held that courts should not sever unconscionable provisions of arbitration clauses while leaving the rest intact, because doing so creates an incentive to get away with as many "bad" arbitration provisions as possible, knowing that the worst case scenario is a court sending the case to arbitration with some of them stripped out. *See Murray*, 289 F.3d at 304-05. This approach has effectively been endorsed in North Carolina. *See Tillman*, 655 S.E.2d at 372-73 ("[I]t is inappropriate to rewrite an illegal or unconscionable contract.").

---

[1] The Court notes Defendant's argument that this was the third ICA Mr. Winston had signed with Academi. But the earlier agreements had substantially different arbitration conditions, so they were of limited value as a reference for Mr. Winston.

6

For these reasons, this Court will not attempt to save the arbitration clauses of the ICAs by severing individual provisions, but instead declares the clauses unenforceable in their entirety.

*Conclusion*

To stay or dismiss this action and send the parties to arbitration under the terms of the ICAs would be unfair to Plaintiffs. The agreements are so substantively unconscionable, that the minor irregularities in how they were executed constitute sufficient procedural unconscionability to render the agreements unenforceable. Academi's motion to stay or, in the alternative, dismiss this action is denied.

March 13, 2013
Alexandria, Virginia

/s/ *(signature)*
Liam O'Grady
United States District Judge